```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
JOSEPH FARSETTA,                       :          16cv6124 (DLC)
                          Plaintiff,   :
                                       :          OPINION AND ORDER
             -v-                       :
                                       :
DEPARTMENT OF VETERANS AFFAIRS and     :
DAVID J. SHULKIN, in his capacity as   :
Secretary of the Department of Veterans:
Affairs,                               :
                                       :
                          Defendants.  :
                                       :
-------------------------------------- X
```

APPEARANCES:

For the plaintiff:
John C. Luke, Jr.
Jonathan A. Tand
Jonathan A. Tand & Associates, P.C.
990 Stewart Avenue
Garden City, NY 11530

For the defendants:
Dominika Natalia Tarczynska
Assistant United States Attorney
Joon H. Kim
Acting United States Attorney
for the Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

DENISE COTE, District Judge:

Joseph Farsetta ("Farsetta") alleges that he was

discriminated against and subjected to a hostile work

environment based on his age, race, and sex while employed at

the Department of Veteran's Affairs (the "VA"). He also brings

a claim for "free speech retaliation" under the First Amendment.

For the reasons that follow, the defendants' motion to dismiss is granted.

## Background

The following facts are drawn from the amended complaint and are construed in favor of the plaintiff.[1]  See Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 68 (2d Cir. 2014). Farsetta is a fifty-seven-year-old white male.  He has worked in the VA for approximately six years. He is currently working as a GS13 career employee with the title Program Specialist Series 0301.  He suffers from several serious health ailments and experienced a heart attack in 2013.

Farsetta's grievances arise from the period following a restructuring at the VA in 2014.  Farsetta was assigned a new supervisor, Jadwiga Kustra ("Kustra"), a female who is younger than Farsetta.  Her race is not specified.  Kustra became the Deputy Director of the NCO-3 Region.  Farsetta alleges that after the reorganization, Kustra and his former supervisor, Yolanda Borges ("Borges"), "began eliminating opportunities for males within the department."  Borges is now the Director for the NCO-3 Region.

---

[1] The description that follows is drawn from the amended complaint, but is written and organized to provide as much clarity regarding its allegations as possible.

Beginning in late 2014, Kustra began imposing "unreasonable workloads" on Farsetta in order to make him fail. These changes to his job duties were in violation of "mandatory OPM guidelines." The new work included "menial clerical work far below his pay grade" and work Kustra herself was supposed to do, specifically supervising contract employees. Kustra denied Farsetta's request for training in Excel that would have been helpful in performing the clerical work and "OSHA 30" training.[2] Kustra was aware that Farsetta was in poor health, and this extra work worsened his medical condition. Farsetta's evaluation for the year 2015 listed goals for the position of 0343 Data Analyst, but correctly identified his job title. Despite this inconsistency, Farsetta "was intimidated into signing the document."

In January 2015, Kustra began requiring Farsetta to use his "unlimited" sick leave in lieu of his vacation time, which was capped at six weeks a year, when he needed to take days off for doctors' appointments or to care for his ill wife. Farsetta

---

[2] The complaint explains that OSHA 30 training is relevant to construction work. The complaint adds that, although Farsetta was no longer involved in such work, OSHA 30 training is "beneficial to all employees".

asserts that this practice violated his union contract and meant that Farsetta "could not accrue any more" vacation time.[3]

In February 2015, Farsetta complained to Borges that the workload of a "black female supervisor" was reduced through the reorganization. Farsetta characterizes this as a "reward" given by management for that employee's poor performance.

In June 2015, Farsetta complained to Borges that female staff in the office were given preferential treatment and that he was being targeted for harassment as the "oldest white male" in the office. Farsetta threatened to complain to the VA's Equal Employment Opportunity Office (the "EEO"). On June 27, 2015, Farsetta emailed Cherie Widger-Kresge ("Widger-Kresge"), a director for NCO-2, about his workload and sick time issues, and Kustra's "overall hostility" towards him.

On July 7, Kustra told Farsetta "in an angry and aggressive manner" that she would be reducing his workload and also that he would have to complete the work currently being performed by contract employees who were slated to be released. Two days later, Farsetta told Kustra that she was imposing "wholly unrealistic goals and setting him up to fall short." Kustra immediately called Farsetta to her office, closed the door, and

---

[3] Neither the amended complaint nor the plaintiff's memorandum in opposition to this motion explains how the demand that he use unlimited sick time prejudiced Farsetta.

told him in an "angry and aggressive manner", "who do you think you are[?]" and "how dare you". She called him "disrespectful" and "insubordinate" when he requested union representation. Kustra pointed in Farsetta's face, "scream[ed] at him, and stepped around her desk to approach Farsetta." Farsetta fled to Borges' office and told her "that the whole exchange had caused his blood pressure to spike so high that he feared he would have a stroke." Farsetta went to a hospital emergency room, where he stayed for approximately seven hours.

A few days later, on July 12, Farsetta was hospitalized for "unstable angina." Farsetta took several weeks of medical leave. Kustra did not fill out the necessary forms for Farsetta's leave immediately but "eventually acquiesced". Among these forms was a request for "Workers['] Compensation," in which Kustra "denied the incident occurred in the workplace" and gave a "wholly false account of the events of July 9." Farsetta was denied Workers' Compensation. On August 21, 2015, Farsetta filed an informal complaint with the EEO, alleging discrimination based on age, race, and sex.[4]

Farsetta returned to work on September 21, 2015. Despite a request from his psychiatrist that Farsetta not be supervised by Kustra, he was not assigned a new supervisor immediately. On

---

[4] The amended complaint does not explain what activities were the subject of the August 21 EEO complaint.

September 22, Widger-Kresge told Farsetta that if he wanted to transfer to another office he would have to drop his EEO complaint.[5]  On September 23, she changed her mind and advised Farsetta that she would begin the transfer process.  Although Farsetta was informed that he would be transferred shortly after October 1, the transfer did not occur until December.  During this time he was shunned by upper management.

On October 30, Kustra issued Farsetta a Letter of Counseling with an inaccurate account of the July 9 events. When Farsetta wrote a letter rebutting Kustra's version of the incident, Kustra "questioned why he believed that he had the right to respond to her letter."

More recently, Farsetta has been denied the opportunity to transfer from contracting to another department.  Farsetta alleges that he met the posted job requirements, but that the VA determined that Farsetta was "not qualified" and he was not "afforded the opportunity for an interview."  Instead, the VA hired a young, black female.  The amended complaint does not identify the position or department to which Farsetta wished to move, when he applied for the transfer, or explain how he was disadvantaged by a denial of this opportunity.

---

[5] As noted above, Farsetta worked in NCO-3, while Widger-Kresge was a director of NCO-2.

Farsetta alleges generally that Kustra and Borges demoted or harassed male or white or older employees. Most of the examples given in support of this assertion focus on gender discrimination and describe instances in which women employees were promoted or in which men were not treated as well as women. The specific examples are as follows:

- Orlando Nieves (a male whose age, race, and title are not plead) was given a supervisory position, was "set up to fail in that position", was replaced by a younger female employee, and was demoted without being afforded "graduated discipline".

- John Hurban (a male contract review attorney whose age and race are not plead) declined the job of Division Chief because he would have had to travel from his home in Putnam County to work in Northport, New York. That position was given instead to Sherin Rabadi (a "series 1102K specialist" whose race and age are not plead), who was allowed to work at a Bronx office of the VA. Rabadi was given this position even though she had no supervisory experience. Rabadi had reported to a male supervisor in health care acquisitions named Selah Scott (whose race and age are not plead), but Scott was demoted. In addition, when Hurban injured himself on the job, Kustra denied that the injury occurred at work.

This resulted in Hurban being denied Workers' Compensation. In contrast, Kustra had submitted Workers' Compensation forms for a woman "despite the fact that no one at the VA witnessed her injury."

- A supervisory position was held open for Stephanie Bellanger (another "series 1102K specialist" whose age and race are not plead) until she could complete the college degree that the position required. She later left that position.

- After the VA required that supervisors have a college degree, a male supervisor was demoted because he lacked a degree, but a female supervisor without a degree was allowed to retain the position.

- Borges and Kustra promoted four other women (whose titles, ages, and race are not plead) to supervisory roles even though the women possessed no supervisory experience. They performed poorly and three of them left the new positions.

- An "older white Caucasian supervisor" was denied a reasonable accommodation for her health issues.

Farsetta brings several causes of action against the Secretary of the VA based on these events.[6]  They include: (1) sex discrimination and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); (2) race discrimination and a hostile work environment in violation of Title VII; (3) age discrimination and a hostile work environment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (the "ADEA"); and (4) free speech retaliation in violation of the First Amendment of the United States Constitution.[7]

Farsetta filed the original complaint on August 2, 2016. On February 14, 2017, the defendants moved to dismiss the complaint.  A February 15 Order allowed the plaintiff to amend the complaint and warned that it would be "unlikely that plaintiff will have a further opportunity to amend."  After

---

[6] Farsetta has consented to the dismissal of his claims against the Department of Veterans Affairs.  See 42 U.S.C. § 2000e-16(c).

[7] Farsetta has consented to dismiss all of his claims brought under the New York State and New York City Human Rights Laws. See Rivera v. Heyman, 157 F.3d 101, 105 (2d Cir. 1998) (affirming dismissal of claims under state and city law because Title VII provides the exclusive remedy for federal employees claiming employment discrimination).  The ADEA provides a cause of action for federal employees for age discrimination.  See 29 U.S.C. § 633a(a) ("All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age.").

receiving two extensions, Farsetta filed an amended complaint on

April 14.[8]  On May 26, the defendants renewed their motion to

dismiss.  The motion became fully submitted on June 30.

## Discussion

When deciding a motion to dismiss under Rule 12(b), Fed. R.

Civ. P., a court must "accept all allegations in the complaint

as true and draw all inferences in the non-moving party's

favor."  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d

471, 475 (2d Cir. 2009).  "To survive a motion to dismiss under

Rule 12(b)(6), a complaint must allege sufficient facts which,

taken as true, state a plausible claim for relief."  Keiler, 751

F.3d at 68; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[A]

complaint must contain sufficient factual matter, accepted as

true, to state a claim for relief that is plausible on its

face.").  A claim has facial plausibility when "the factual

content" of the complaint "allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged."  Tongue v. Sanofi, 816 F.3d 199, 209 (2d

Cir. 2016) (citation omitted).  "Where a complaint pleads facts

that are merely consistent with a defendant's liability, it

stops short of the line between possibility and plausibility of

entitlement to relief."  Iqbal, 556 U.S. at 678 (citation

---

[8] The April 14 complaint principally adds allegations regarding
other employees.  It asserts identical claims for relief.

omitted).  In sum, "a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 550

U.S. 544, 555 (2007) (citation omitted).

## I.  Discrimination Based on Differential Treatment

Under the ADEA it is "unlawful for an employer . . . to

fail or refuse to hire or to discharge any individual or

otherwise discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of

employment, because of such individual's age."  29 U.S.C.

§ 623(a)(1).  Title VII prohibits "discriminat[ion] against any

individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's race,

color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.

In general, the "same standards govern disparate treatment

claims" arising under either Title VII or the ADEA.  <u>Brennan v.</u>

<u>Metro. Opera Ass'n, Inc.</u>, 192 F.3d 310, 316 (2d Cir. 1999).

In order establish a <u>prima facie</u> case of discrimination

under Title VII, a plaintiff must show that "(1) she is a member

of a protected class; (2) she is qualified for her position; (3)

she suffered an adverse employment action; and (4) the

circumstances give rise to an inference of discrimination."

<u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 83 (2d

Cir. 2015).  But "an employment discrimination plaintiff need
not plead a prima facie case of discrimination at the motion to
dismiss stage."  Id. (citation omitted).  To state a claim for
employment discrimination under Title VII, "a plaintiff must
plausibly allege that (1) the employer took adverse action
against him, and (2) his race, color, religion, sex, or national
origin was a motivating factor in the employment decision."
Shultz v. Congregation Shearith Israel of City of New York, No.
16-3140-CV, 2017 WL 3427130, at *3 (2d Cir. Aug. 10, 2017).[9]

> At the pleadings stage, then, a plaintiff must allege
> that the employer took adverse action against her at
> least in part for a discriminatory reason, and she may
> do so by alleging facts that directly show
> discrimination or facts that indirectly show
> discrimination by giving rise to a plausible inference
> of discrimination.

Vega, 801 F.3d at 87.  Direct evidence is typically in the form
of remarks made about the plaintiff, or the protected class to
which she belongs.  In determining whether a remark is probative
of discrimination, courts consider four non-exhaustive factors:

> (1) who made the remark (i.e., a decision-maker, a
> supervisor, or a low-level co-worker); (2) when the
> remark was made in relation to the employment decision
> at issue; (3) the content of the remark (i.e., whether
> a reasonable juror could view the remark as
> discriminatory); and (4) the context in which the
> remark was made (i.e., whether it was related to the
> decision-making process).

---

[9] A plaintiff bringing suit under the ADEA, however, must
ultimately show that "age was a 'but for' cause of" the adverse
action.  Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d
Cir. 2014) (citation omitted) (summary judgment).

Henry v. Wyeth Pharm., Inc., 616 F.3d 134, 149 (2d Cir. 2010)
(summary judgment).

At the pleadings stage, a plaintiff may also allege
disparate treatment by pleading "the more favorable treatment of
employees not in the protected group," Littlejohn v. City of New
York, 795 F.3d 297, 312 (2d Cir. 2015), who are "similarly
situated in all material respects," Brown v. Daikin Am. Inc.,
756 F.3d 219, 230 (2d Cir. 2014) (citation omitted).  Whether
the plaintiff and these comparator employees are similarly
situated in "all material respects will vary from case to case,"
and while "[t]he plaintiff's and comparator's circumstances must
bear a reasonably close resemblance," they "need not be
identical."  Id. (citation omitted).  While "detailed factual
allegations are not required, a formulaic recitation does not
suffice."  Vega, 801 F.3d at 86 (citation omitted).

An adverse employment action exists if an employee "endures
a materially adverse change in the terms and conditions of
employment."  Id. at 85 (citation omitted).  This must be "more
disruptive than a mere inconvenience or an alteration of job
responsibilities."  Id. (citation omitted).  "Examples of
materially adverse employment actions include termination of
employment, a demotion evidenced by a decrease in wage or
salary, a less distinguished title, a material loss of benefits,

significantly diminished material responsibilities, or other indices unique to a particular situation." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (citation omitted). A "disproportionately heavy workload" can constitute an adverse employment action. Vega, 801 F.3d at 85. "A denial of a transfer may also constitute an adverse employment action, but we require a plaintiff to proffer objective indicia of material disadvantage; subjective, personal disappointment is not enough." Beyer v. Cty. of Nassau, 524 F.3d 160, 164 (2d Cir. 2008) (citation omitted).

In opposition to this motion to dismiss, Farsetta contends that the following five actions constitute adverse employment actions: (1) Kustra stripped Farsetta of duties, ordered him to perform new duties, and overburdened him with work; (2) Kustra denied him training in Excel and OSHA; (3) Kustra forced him to use unlimited sick time rather than restricted vacation time; (4) Farsetta was denied Workers' Compensation because Kustra falsely described the July 9 events; and (5) Farsetta was denied a transfer, either in the form of a delayed reassignment to a new supervisor in the Fall of 2015 or through a denied opportunity to transfer to another department at some unspecified date thereafter.[10]

---

[10] The defendants also argue that Farsetta's claims regarding the denial of Workers' Compensation and the denial of a transfer to

14

The amended complaint does not plausibly allege that three of these actions are significant enough to constitute adverse employment actions. They are the denial of training in Excel and OSHA; the obligation to use unlimited sick leave, rather than his accrued vacation days, for health-related leave; and the approximately two month delay in a transfer to a different supervisor and the failure to transfer Farsetta to some other unspecified job. The amended complaint does plausibly allege that the defendant took adverse employment actions against Farsetta in his work assignments, when those allegations are considered as a whole, and in obstructing his effort to obtain Workers' Compensation.

---

another department have not been administratively exhausted, because Farsetta did not include these facts in his EEO complaint. "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days 'after the alleged unlawful employment practice occurred.'" Vega, 801 F.3d at 78-79 (quoting 42 U.S.C. § 2000e-5(e)(1)). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 384 (2d Cir. 2015) (citation omitted). The exhaustion requirement is not a jurisdictional bar, but rather a precondition of suit subject to equitable defenses. Id. Where the allegations are "'reasonably related' to the discrimination about which [the plaintiff] had filed an earlier charge . . . the failure to raise the allegations in the complaint before the EEOC may not bar federal court proceedings." Id. at 386-87 (citation omitted).

With respect to each of the five alleged adverse employment actions, however, Farsetta's discrimination claims fail for a separate reason.  Farsetta has not met his minimal burden to plead facts that would give rise to a plausible inference of discrimination.  He does not plead direct evidence of age, race or gender discrimination.  Nor does he identify comparators who were similarly situated in all material respects (except, of course, for any one of his protected characteristics) and treated more favorably.  For example, he is a Program Specialist Series 0301.  He does not identify any other Program Specialist Series 0301 who was given materially less work and was younger, female, or non-white.  Nor does he allege that there are any employees with another job title but roughly equivalent responsibilities, and for which the work of white, older, and/or males in that position was more burdensome than the workload of comparators.  Conversely, many of the allegations in the amended complaint concern women being given promotions, but the complaint does not assert that Farsetta ever applied for a promotion that he was not given, much less that a less qualified woman was promoted to a position for which he applied.

In opposition to this motion, Farsetta points to only a few allegations from the amended complaint to argue that they are sufficient to support a plausible inference of discrimination.  Those allegations are examined here.  Farsetta points to only

one comparator for whom the amended complaint suggests that age may have influenced the VA's actions.[11]  He points to his allegation that an older, white woman was denied a reasonable accommodation for her health issues.  Farsetta does not suggest that he ever requested and was denied an accommodation for a health issue.  Nor does he plead any other facts that would reasonable support an inference that this comparator was similarly situated in ways material to his claims.

The amended complaint's allegations regarding race are sparse and Farsetta identifies no comparators in opposition to this motion to dismiss that he argues are relevant to allegations regarding race.  Accordingly, this claim can be swiftly dismissed.

The amended complaint primarily makes allegations regarding gender.  Again, however, it makes no allegations of explicit discrimination, such as disparaging comments made about gender. In opposition to this motion Farsetta focuses on three alleged comparators.  He argues that there is a plausible inference of

_____

[11] In opposition to the motion, Farsetta also argues that his age discrimination claim is supported by his awareness that several older men were targeted for harassment.  This conclusory statement is inadequate to support a plausible claim of discrimination.  He refers as well to Kustra's denial that John Hurban was injured on the job.  But, the amended complaint provides no basis to infer that this was due to his age -- his age is not plead -- and no basis to find that Hurban -- a contract review attorney -- was similarly situated to Farsetta in any way relevant to the adverse actions at issue here.

gender discrimination against him because (1) a male employee, John Hurban, was denied Workers' Compensation coverage when Kustra stated that Hurban did not fall and injure himself at work; (2) Kustra submitted Workers' Compensation forms for a woman "despite the fact that no one at the VA witnessed her injury"; and (3) a black, female supervisor who could not effectively manage her section's workload was rewarded by "management" by having her workload reduced through the reorganization.  These exemplars do not provide a basis from which to infer discriminatory intent.

Starting with the last of the three examples, it is not relevant to any of the plaintiff's claims.  Farsetta was not a supervisor, and he pleads no facts from which it would be fair to infer that any adjustment made to the female supervisor's workload sheds light on the alleged discriminatory animus of the VA towards Farsetta.  The other two examples touch tangentially on one of Farsetta's identified adverse actions:  Kustra's alleged misrepresentation of their confrontation on July 9 and the effect of that misrepresentation on his application for Workers' Compensation benefits.  But, the fact that there were three employees who applied for Workers' Compensation benefits, and that the VA supported the application of the female employee but not the application of the two male employees is insufficient by itself to create an inference of animus due to

gender.  More facts would have to be alleged for the amended complaint to support a fair inference that these applicants or applications were similarly situated such that a claim of discriminatory intent is plausible.

In sum, the complaint does not contain sufficient information from which to infer that any of the men or women it mentions were so similarly situated to Farsetta that their treatment provides any basis from which to infer discriminatory intent.  Accordingly, the age, race, and gender discrimination claims must be dismissed.

## II.  Hostile Work Environment

Farsetta also alleges that he was subjected to a hostile work environment based on his age, race, and sex in violation of Title VII and the ADEA.  "The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII."  Brennan, 192 F.3d at 318.  "In order to establish a hostile work environment claim under Title VII, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Shultz, 2017 WL 3427130, at *7 (citation omitted) (motion to dismiss).  "It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected

characteristic." Tolbert v. Smith, 790 F.3d 427, 439 (2d Cir. 2015).

> "At the pleading stage of the case, however, plaintiffs need not plead a prima facie case of discrimination based on hostile work environment, so long as they provide in the complaint a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendant fair notice of plaintiffs' claim for hostile work environment and the grounds upon which that claim rests."

Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 241 (2d Cir. 2007) (citation omitted).

In opposition to this motion to dismiss, Farsetta asserts that the following allegations plead a hostile work environment: (1) that Kustra imposed an unreasonable workload on him, stripped him of duties, and ordered him to perform duties outside of his job description; (2) that Kustra denied him training; and (3) that Kustra verbally and physically threatened Farsetta at the July 9 meeting to the point that he was hospitalized. With one exception, this does not plead the creation of a hostile work environment. Complaints about work assignments are not generally sufficient to state a hostile work environment claim. See Vega, 801 F.3d at 85 (an "alteration of job responsibilities" not sufficient to support a hostile work environment). Nor are complaints about the denial of desired but unnecessary training. See Gregory v. Daly, 243 F.3d 687, 693 (2d Cir. 2001) (allegations of "deprivation of necessary

training, that directly interfered with [the plaintiff's]
ability to do her job" as well as "verbal abuse, ostentatious
and graphic references to sexual assault and women's
vulnerability to it, and intimidating physical behavior" plead
claim for hostile work environment) (emphasis added).  The
allegations regarding the July 9 incident, however, describe a
sufficiently severe encounter that it may constitute an event
that altered the conditions of Farsetta's employment.  But, as
discussed above, the amended complaint does not provide a
plausible basis to infer that this incident "occurred because of
a protected characteristic."  Tolbert, 790 F.3d at 439.

### III. Free Speech Retaliation Under the First Amendment

Farsetta purports to bring a "free speech retaliation" claim
under the First Amendment.  He does not identify which acts were
taken in retaliation for the exercise of these rights, but they
would appear to be the approximately two month delay in
transferring him to another supervisor and the failure to
transfer him to some unspecified post after that time.

The United States has not waived sovereign immunity for
constitutional tort claims.  Castro v. United States, 34 F.3d
106, 110 (2d Cir. 1994).  Accordingly, the Court lacks subject
matter jurisdiction over Farsetta's claim that the VA violated
his First Amendment rights.

**IV. Request to Change Legal Theory**

Farsetta requests in opposition to this motion that the court "move forward" on his retaliation claim under Title VII and the ADEA. But, the amended complaint does not bring retaliation claims under those two statutes, and a plaintiff may not amend the complaint through a brief filed in opposition to a motion to dismiss. See Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998).

Nor will Farsetta be given an opportunity to amend his pleading for a second time. The defendants moved to dismiss the original complaint's claim asserting "free speech retaliation" in violation of the First Amendment on the ground that there is no subject matter jurisdiction over that First Amendment claim.[12] The defendants' brief also identified and argued against any potential claim "pursuant to Title VII and the ADEA for retaliation based on prior protected activity." A February 15, 2017 Scheduling Order allowed Farsetta an opportunity to amend his complaint and warned that "[i]t is unlikely that plaintiff will have a further opportunity to amend." Following two extensions, Farsetta filed an amended complaint on April 14. It reasserts its cause of action for "free speech retaliation" in

---

[12] The amended complaint also brought retaliation claims under NYCHRL and NYSHRL, which Farsetta consented to dismiss.

violation of the First Amendment.  The defendants then filed this renewed motion to dismiss.

Given the scheduling orders entered in this case, the standard set by Rule 16 and not Rule 15 governs this application.  A district court "does not abuse its discretion in denying leave to amend the pleadings where the moving party has failed to establish good cause, as required by Rule 16(b), to amend the pleadings after the deadline set in the scheduling order."  Kassner, 496 F.3d at 243.  "Whether good cause exists turns on the diligence of the moving party."  BPP Illinois, LLC v. Royal Bank of Scotland Grp. PLC, 859 F.3d 188, 195 (2d Cir. 2017) (citation omitted).

Farsetta has not shown good cause to justify further amendment of the complaint.  Despite having notice of the pleading deficiency in mid-February, receiving two extensions of the deadline to amend, and a warning that a further opportunity to amend was unlikely, the plaintiff failed to remedy the deficiency in his pleading.  Nor has plaintiff's counsel attempted to show good cause in the opposition brief for a further opportunity to amend.  Accordingly, the plaintiff's request to "move forward on claims under Title VII, and the ADEA" is denied.

## Conclusion

The defendants' May 26, 2017 motion to dismiss is granted. The Clerk of Court shall enter judgment for the defendants and close the case.

Dated:    New York, New York
           August 24, 2017

_____
DENISE COTE
United States District Judge